**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **CROWD SOURCE DEVELOPMENT, INC.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **ENTREPIDUS, LLC, MARCELO CASTRO,** | ) |
| **MAURIZIO ACQUAVELLA & FERNANDO** | ) |
| **VALENTINER** | ) |
| | ) |
| **Defendants.** | ) |

## COMPLAINT

Now comes CROWD SOURCE DEVELOPMENT, INC., by and through its attorneys KEEFE, CAMPBELL, BIERY & ASSOCIATES, and for its complaint states as follows:

## NATURE OF ACTION

1.     This is an action for violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, et. seq., for threatened or actual misappropriation of trade secrets arising under the Illinois Trade Secrets Act, 765 ILCS 1065/1 et seq., breach of fiduciary duty, usurpation of corporate opportunity, declaratory judgment of patent ownership, fraudulent misrepresentation, and civil conspiracy.

## THE PARTIES

2.     Plaintiff Crowd Source Development, Inc. ("Crowd Source") is a closely held corporation organized and existing under the laws of the State of Delaware, and is registered as a foreign corporation in Illinois, with its principal place of business and world headquarters at 500 North Michigan Avenue, Suite 600, Chicago, Illinois 60611.

1

3.    Defendant Entrepidus LLC ("Entrepidus") is an LLC organized and existing under the laws of Florida, with its principal place of business at 1670 N.W. 94th Ave., Doral, FL 33172.

4.    Defendant Marcelo Castro ("Castro"), is a US Citizen, residing at 16731 SW 14th St, Pembroke Pines, FL 33027-1409, and is the sole owner of Entrepidus LLC.

5.    Defendant Maurizio Acquavella ("Acquavella"), on information and belief, is a Venezuelan citizen, present in the USA based on an H-1B visa, and on information and belief resides at 1610 Lenox Ave, #204, Miami Beach, FL 33139.

6.    Defendant Fernando Valentiner ("Valentiner"), on information and belief, is a Venezuelan citizen, present in the USA based on an H-1B visa, and on information and believe resides in Miami FL.

**JURISDICTION AND VENUE**

7.    This Court has subject matter jurisdiction over Crowd Source's claims arising under the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030, et seq., pursuant to 28 U.S.C. § 1331. This Court also has supplemental jurisdiction over all other claims asserted herein pursuant to 28 U.S.C. § 1367 because those claims are so related to the claims brought under the CFAA so as to form part of the same case or controversy.

8.    This Court has personal jurisdiction over Entrepidus. Entrepidus owns 42% of the outstanding shares of Crowd Source, and controls 50% of the voting shares of Crowd Source. Further, on information and belief, at all times relevant hereto, Entrepidus has transacted business with Crowd Source in this District, and/or has committed tortious acts in Illinois and this District. Defendant Entrepidus' wrongful conduct, as set forth herein, arises out of and is related to the business it has transacted and the tortious acts it has committed in this State and District.

9.     This Court has personal jurisdiction over Castro. Castro owns 100% of Defendant Entrepidus, which in turn owns 42% of plaintiff's outstanding shares. Further, on information and belief, at all times relevant hereto, Castro through Entrepidus has transacted business with Crowd Source in this District, and/or has committed tortious acts in Illinois and this District. Castro's wrongful conduct, as set forth herein, arises out of and is related to the business he has transacted and the tortious acts he has committed in this State and District.

10.     This Court has personal jurisdiction over Acquavella. During pre-incorporation discussions, Acquavella fraudulently misrepresented he was a 33% owner of Entrepidus, which received a 42% ownership interest based in part on Acquavella's statements. Further, on information and belief, at all times relevant hereto, Acquavella has transacted business with Crowd Source in this District, requested reimbursement from Crowd Source for personal expenses, and/or has committed tortious acts in Illinois and this District. Acquavella's wrongful conduct, as set forth herein, arises out of and is related to the tortious acts he has committed in this State and District.

11.     This Court has personal jurisdiction over Valentiner. During pre-incorporation discussions, Valentiner fraudulently misrepresented he was a 33% owner of Entrepidus, which received a 42% ownership interest based in part on Valentiner's statements. Further, on information and belief, at all times relevant hereto, Valentiner has appeared in person and transacted business with Crowd Source in this District, and/or has committed tortious acts in Illinois and this District. Valentiner's wrongful conduct, as set forth herein, arises out of and is related to the tortious acts he has committed in this State and District.

## GENERAL ALLEGATIONS

12.     Crowd Source is a corporation involved in communications technologies and mobile marketing solutions. For nearly 3 years, Crowd Source has competed at the forefront of

research and development of cloud based marketing systems, methods, products and services.

13. Crowd Source has been recognized for its innovations in communications cloud based marketing campaign management, communications, mobile analytics, and real time marketing data reporting.

14. Crowd Source's proprietary and confidential mobile communications technologies include: proprietary cloud based marketing campaign delivery systems and methods; proprietary data communications service and product technologies; proprietary communications designs, solutions, and initiatives; proprietary geo-fenced targeted marketing delivery systems; and proprietary digital coupon redemption systems. The primary application suite these systems and methods fall under is internally referred to, trademarked, and marketed under the name INSIGHT.

15. Crowd Source's proprietary trade secrets and the confidential information contained in INSIGHT are not generally known in the trade, and Crowd Source derives economic value and a competitive advantage in the marketplace from the secrecy of such information. Crowd Source's proprietary trade secrets and confidential information are Crowd Source's primary assets in a fledgling marketplace of mobile marketing application development and mobile marketing analytics suites, a sector which moves and changes rapidly. Maintaining an edge over competition in this space can be the difference between a company's survival and dissolution.

16. Crowd Source has invested thousands of man hours and hundreds of thousands of dollars researching and developing its proprietary trade secrets and confidential information.

17. At all times relevant hereto, Crowd Source has used reasonable measures to protect the secrecy of its proprietary trade secrets and confidential information, including but not limited to: restricted access on a need-to-know basis; global confidentiality policies;

contractual confidentiality restrictions; password-protected computer and network platforms; and a wide array of additional security measures.

18.     In the summer of 2011, pre-incorporation, Jefferson Dance, a Canadian citizen and President and founder of Crowd Source, met with Valentiner and Acquavella, in order to discuss forming Crowd Source.

19.     Throughout 2011 and through the first six months of 2012, Valentiner and Acquavella held themselves out to be principals, partners, and each a 1/3 owner of Defendant Entrepidus LLC, with Castro owning the remaining 1/3.

20.     In discussing the INSIGHT technology concepts Dance had designed, and based on the assertions provided to him by Valentiner and Acquavella, Dance retained Defendant Entrepidus  to develop the enterprise level mobile marketing solution he had designed.

21.     In exchange for an agreement to provide development services at a significantly reduced rate, Defendant Entrepidus and Dance agreed Entrepidus would be provided an ownership interest in Crowd Source of 50% of all voting shares.

22.     Dance and Crowd Source reposed a high level of trust and confidence in Valentiner's and Acquavella's trustworthiness, integrity, and fidelity to their obligations towards Crowd Source. These duties were memorialized in part through pre-incorporation agreements that were drafted and sent to Defendants.

23.     Crowd Source also supplied Acquavella and Valentiner with non-disclosure agreements directed to Entrepidus, seeking their authorized signature on same to bind Entrepidus.

24.     All Defendants made assertions to abide by the terms outlined in the pre-incorporation agreements and non-disclosure agreements.

25.　To date, none of the Defendants have executed said pre-incorporation agreements or non-disclosure agreements, despite numerous requests by Crowd Source for same.

26.　Prior to discussions with Dance, in the summer of 2011, Defendants had been designing and coding a similar product they titled ISSY. By their own admission, this product was 60-80% completed before Dance approached Valentiner and Acquavella regarding the formation of Crowd Source.

27.　Defendants failed to disclose ISSY's existence at any time during pre-incorporation discussions, or following Crowd Source's incorporation, or through the time Defendants obtained an ownership interest in Crowd Source.

28.　In the course of their employment with and ownership or control of Entrepidus, Defendant's had access to Crowd Source's proprietary trade secrets and confidential information in the performance of their duties.

29.　Without Crowd Source's knowledge or consent, Entrepidus, Valentiner, Acquavella and Castro, after gaining access to the concepts and architecture of INSIGHT utilized that technology owned by and developed for Crowd Source to complete work on ISSY.

30.　Crowd Source became aware of ISSY in March 2012 when Jefferson Dance found reference to it on Entrepidus' website.

31.　When approached about ISSY, Entrepidus first identified it as an in store, internal, data management and data collection tool which was being sold to small to medium sized businesses to help them better facilitate inventory and sales cycle analysis via data collection and reporting.

32.　Entrepidus assured Crowd Source ISSY in no way competed with INSIGHT, as it dealt solely with internal store data and did not obtain consumer level market data.

6

33.     On March 27, 2012 Dance proposed to Castro, Acquavella, and Valentiner entering into a written agreement between Crowd Source and Entrepidus clarifying ownership of both INSIGHT and ISSY, in hopes of an amicable agreement to allow both technologies to exist without any direct competition, consistent with the assertions of Entrepidus.

34.     To date Entrepidus has delayed response to, rejected, or refused all offers to enter into such an agreement.

35.     In June 2012, Crowd Source became aware Castro was the sole owner of Entrepidus. When approached about this, Acquavella and Valentiner asserted it was on paper only, due to their H-1B visa status, and that while Castro did formally own 100% of Entrepidus, they were his partners.

36.     In October 2012 Acquavella admitted individuals in Venezuela he was employing were in the process of leaving his employ and he was concerned over their retention of proprietary technology. Despite repeated requests for confirmation of and clarification over this matter, Acquavella asserted the matter had been resolved.

37.     In December 2012, Acquavella had been developing Pepsico as a client of Crowd Source for roughly 11 months, and without consulting with any officers of Crowd Source, offered Pepsico exclusivity of use of the INSIGHT solution in the soft drink industry at no additional cost to them.

38.     Crowd Source advised this exclusivity would not be agreeable without an attendant and respective fee; Acquavella orchestrated several telephonic meetings and one in person visit to New York Pepsico headquarters, the result of which lead to Pepsico requesting to deal with Acquavella and Entrepidus only, and not to deal directly with Crowd Source.

39.     In light of this request, in August 2013 Crowd Source offered Entrepidus a white label/channel partnership and licensing agreement whereby Entrepidus could licenses the INSIGHT technology and resell it directly.

40.     To date, this document has never been executed, and while Entrepidus has no license to directly sell INSIGHT, all monies ceased to flow to Crowd Source from Pepsico as of August 2013.

41.     On information and belief, Entrepidus continues to accept money from Pepsico and to provide INSIGHT services to them.

42.     Despite requests for clarification over their relationship and execution of a contract with Pepsico for services, Entrepidus has refused to disclose any signed agreements they have with Pepsico, and has actively prevented Crowd Source from directly communicating with Pepsico regarding same.

43.     During 2013, Entrepidus accepted monies from Fedex Mexico for the INSIGHT service. The initial payments from said client were delivered to Crowd Source, however no signed agreements were produced regarding such payments.

44.     On information and belief, Entrepidus continues to deliver INSIGHT services to Fedex Mexico and continues to charge for said services.

45.     Beginning in July 2013, Entrepidus began having significant delays and a reduction in quality in their development work for Crowd Source.

46.     On information and belief, said delays and quality concerns were related to the time being spent on marketing and development of ISSY.

47.  In August 2013, Dance became aware of ISSY being re-launched by Entrepidus as a competitor to INSIGHT, based on marketing materials posted on the Entrepidus website.

48.  In September 2013, Crowd Source approached Entrepidus with concerns over the marketing materials of ISSY and requested a demonstration of the application and a phone conference to go over where it intersected with INSIGHT.

49.  On September 12, 2013 a conference call was had where Valentiner admitted ISSY was built partially with INSIGHT technology; Valentiner admitted ISSY had been 60-80% complete prior to incorporating some INSIGHT features.

50.  Despite this clear misappropriation of Crowd Source proprietary technology, Crowd Source attempted to amicably resolve these issues by again raising the issue of the licensing agreement and channel partner agreements, with confirmation it was willing to waive any claim to ISSY so long as the tool was not marketed or used as a direct competitor to INSIGHT.

51.  To date, Entrepidus has refused to agree to the terms of such a licensing deal put forth by Crowd Source, and despite numerous requests for a counter-proposal, Entrepidus has failed to produce one.

52.  Entrepidus continues to sell and market ISSY as a direct competitor to INSIGHT; on information and belief ISSY has been sold to Pepsico, and Sony, and at least one other party since November 2013.

53.  In November 2013, Entrepidus delays in producing adequate deliverables with respect to routine application development began impacting Crowd Source clientele such that the primary paying client of Crowd Source raised serious concerns about moving forward with continued service in 2014.

54.    In November 2013, Crowd Source and Entrepidus began discussions regarding a possible exit of Entrepidus from Crowd Source.

55.    On or about December 2, 2013 Entrepidus revoked access to Crowd Source's domains and has usurped control and access to the primary repositories of all INSIGHT code, and has locked Crowd Source out of the servers containing all of Crowd Source's data backups.

56.    In December 2013, Entrepidus and Crowd Source began discussing Crowd Source potentially buying Entrepidus' shares of Crowd Source as part of an exit package; a requirement for doing so would be to move the technology to a different development team.

57.    On December 21, 2013 Crowd Source retained new developers to whom access was to be delivered as of January 1, 2014 to begin facilitating the migration of the source code of INSIGHT and the backups of the data currently controlled by Entrepidus.

58.    Despite numerous requests for Entrepidus to provide access to or copies of said information during the course of the negotiations over the sale of Entrepidus' shares, Entrepidus has refused to provide same.

59.    Entrepidus has continued its decline in service and timely delivery through December 2013 and January 2014 such that the primary contract for service Crowd Source has as a revenue source is currently in jeopardy of being breached.

## COUNT ONE
## COMPUTER FRAUD AND ABUSE ACT
### (Against All Defendants)

60.     Crowd Source repeats and realleges the averments of paragraphs 1-59 as if fully set forth herein.

61.     All computers used by Defendants without authorization or in excess of authorized access, or to destroy or impair Crowd Source information, including but not limited to all servers, desktop computers, laptop computers, external hard drives, "Android" smartphones, Apple Iphones, and thumb drives, USB drives, and "flash" drives, were at all relevant times used in interstate commerce and are protected computers pursuant to the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(e). The Crowd Source proprietary trade secrets and confidential information is stored on, and may be accessed from, one or more of these protected computers owned or controlled by Crowd Source, access to which is strictly controlled via various security measures, including secret passwords, and all are used in or affect interstate or foreign communications or commerce.

62.     Defendants intentionally accessed the secure, protected computers of Crowd Source or other protected computers without authorization or exceeding their authorization, and thereby obtained information from those protected computers, in violation of 18 U.S.C. § 1030(a)(2)(C).

63.     Defendants knowingly and with the intent to defraud, accessed the secure, protected computers of Crowd Source or other protected computers, or caused others to access the secure, protected computers of Crowd Source, without authorization or in excess of their authorized access and in furtherance of the intended fraud obtained the valuable Crowd Source proprietary trade secrets and confidential information and/or other valuable information or the valuable use of the secure Crowd Source network and computers, which has a value exceeding five thousand dollars ($5,000.00) in a one-year period, in violation of 18 U.S.C. § 1030(a)(4).

64.     Defendants knowingly caused the transmission of a program, information, code, or command and/or intentionally accessed the protected computers of Crowd Source and/or other protected computers, and, as a result, intentionally and without authorization, recklessly caused damage and loss to the secure, protected computers of Crowd Source and/or other protected computers in violation of 18 U.S.C. § 1030(a)(5)(A)-(C).

65.     Defendants, through their actions in violation of 18 U.S.C. § 1030(a)(2), (a)(4), and (a)(5)(A)-(C), have caused Crowd Source to incur losses for responding to and investigation of Defendants' misconduct, including damage and security assessments, exceeding five thousand dollars ($5,000.00) during a one-year period in violation of 18 U.S.C. § 1030(g) and (c)(4)(A)(i)(I); the investigation of such losses continues.

66.     In addition to an award of compensatory damages, Crowd Source also is entitled to injunctive relief pursuant to 18 U.S.C. § 1030(g), restraining and enjoining Defendants and all those in privity, concert or participation with Defendants from engaging in such wrongful acts in violation of 18 U.S.C. § 1030(a)(2), (a)(4), and (a)(5)(A)-(C).

        WHEREFORE, Crowd Source respectfully requests that this Court enter the following relief against Defendants:

        a)      enter judgment in favor of Crowd Source on Count One;

        b)      award both preliminary and permanent injunctive relief pursuant to 18 U.S.C. § 1030, et seq., restraining and enjoining Defendants and all those in privity, concert or participation with them from engaging in acts and practices in violation thereof;

        c)      award compensatory damages pursuant to 18 U.S.C. § 1030, et seq., in an amount in excess of $5,000.00 to be proven at trial;

12

d)      enter an order compelling Defendants to return any and all of Crowd Source's proprietary trade secrets and confidential information including all types of scientific, technical and engineering information, files, documents, drawings, schematics, programs, object code, source code, designs, prototypes and the like, in Defendants' possession, custody or control, and wherever and however stored physically, electronically, graphically, photographically, or in writing, and all derivations and compilations and/or other memorialization of such purloined information; together with such other affirmative relief required to compel compliance with this order, including the use of electronic evidence experts and other technicians;

e)      enter an order compelling Defendants to disclose its actual and potential customers and any and all persons and entities to which Defendants disclosed Crowd Source's proprietary trade secrets and confidential information; and

f)      such further relief as this Court may deem just and proper, in law or equity.

## COUNT TWO
## THREATENED OR ACTUAL
## MISAPPROPRIATION OF TRADE SECRETS
### (Against All Defendants)

67.     Crowd Source repeats and realleges the averments of paragraphs 1-59 as if fully set forth herein.

68.     The Crowd Source proprietary trade secrets and confidential information, set forth individually and collectively in the preceding paragraphs of the Complaint, are statutory "trade secrets" protected by the Illinois Trade Secrets Act, 765 ILCS 1065/1 et seq.

69. At all times, Crowd Source has taken reasonable measures to protect the Crowd Source proprietary trade secrets and confidential information, and Crowd Source derives economic value and competitive advantage from such information not being generally known to the public or trade.

70. There exists the threatened or actual misappropriation of trade secrets by the Defendants, acting individually and in concert, to acquire, disclose and/or use, by improper means, the Crowd Source proprietary trade secrets and confidential information for their own benefit and/or the benefit of others without or exceeding Crowd Source's authorization and consent.

71. Crowd Source has sustained and will continue to sustain damages, and Defendants have been and will continue to be unjustly enriched in an amount to be proven at trial, as a direct result of Defendants' threatened or actual misappropriation of the Crowd Source proprietary trade secrets and confidential information.

72. Defendants' threatened or actual misappropriation of the Crowd Source proprietary trade secrets and confidential information has been willful and malicious and entitles Crowd Source to exemplary damages and an award of attorneys' fees and costs pursuant to the Illinois Trade Secrets Act, 765 ILCS 1065/1 et seq.

73. Crowd Source also is entitled to injunctive relief to prevent the threatened or actual misappropriation of the Crowd Source proprietary trade secrets and confidential information by Defendants pursuant to the Illinois Trade Secrets Act, 765 ILCS 1065/1 et seq.

WHEREFORE, Crowd Source respectfully requests that this Court enter the following relief against Defendants:

a)      enter judgment in favor of Crowd Source on Count Two;

14

b)    both preliminary and permanent relief pursuant to 765 ILCS 1065/1, et seq. restraining and enjoining Defendant Entrepidus, its officers, directors, employees, agents, and all those in privity, concert or participation with it from the threatened or actual misappropriation of the Crowd Source proprietary trade secrets and confidential information;

c)    both preliminary and permanent relief pursuant to 765 ILCS 1065/1, et seq. restraining and enjoining Defendants Acquavella, Valentiner, and Castro, and all those in privity, concert or participation with them from the threatened or actual misappropriation of the Crowd Source proprietary trade secrets and confidential information;

d)    a finding that Defendants' acts and conduct constitute the actual or threatened misappropriation of trade secrets in violation of 765 ILCS 1065/1, et seq., and that such acts and conduct are and have been willful and malicious;

e)    compensatory and increased damages sustained as a result of Defendants' wrongful actions, together with an accounting of Defendants' profits and unjust enrichment arising from such actions;

f)    an order compelling Defendants to return any and all of Crowd Source's proprietary trade secrets and confidential information including all types of scientific, technical and engineering information, files, documents, drawings, schematics, programs, object code, source code, designs, prototypes and the like, in Defendants' possession, custody or control, and wherever and however stored physically, electronically, graphically, photographically, or in writing, and all derivations and compilations and/or other memorialization of such purloined information; together with such other affirmative relief required to compel

compliance with this order, including the use of electronic evidence experts and other technicians;

g)    an order compelling Defendants to disclose its actual and potential customers and any and all persons and entities to which Defendants disclosed Crowd Source's proprietary trade secrets and confidential information;

h)    attorneys' fees and costs pursuant to 765 ILCS 1065/1, et seq.;

i)    such further relief as this Court may deem just and proper, in law or equity.

## COUNT THREE
## BREACH OF FIDUCIARY DUTY
### (Against Castro, Entrepidus)

74.    Crowd Source repeats and realleges the averments of paragraphs 1-59 as if fully set forth herein.

75.    Defendant Entrepidus owns 42% of the outstanding shares in Crowd Source, and 50% of the voting shares of Crowd Source.

76.    As an owner of 50% of the voting stock in a closely held corporation, Entrepidus and Castro each owed Crowd Source a duty of loyalty.

77.    Defendant Entrepidus and Castro, as sole actual owner of Entrepidus, by the creation and sale of the product ISSY abused their respective positions of trust and confidence with Crowd Source to further their private interests, failed to protect the corporate property of Crowd Source, and deprived Crowd Source of profit or advantages in the marketplace.

78.    Defendants Entrepidus and Castro by their actions individually and in concert, violated the duty of loyalty required of them as owners of 50% of the voting stock of Crowd

Source not to engage in competition with Crowd Source while controlling such an interest.

79.     Defendants Entrepidus and Castro, individually and in concert, acted with fraud, oppression, and/or malice.

80.     Crowd Source has sustained losses and damages as a direct and proximate result of Defendant's wrongful actions described herein in an amount to be determined at trial.

WHEREFORE, Crowd Source respectfully requests that this Court enter the following relief against Defendants:

a)      enter judgment in favor of Crowd Source on Count Three;

b)      compensatory damages, including disgorgement, for the breach of fiduciary duty by Defendants Entrepidus and Castro;

c)      exemplary damages for the acts constituting breach of fiduciary duty committed with fraud, oppression, and/or malice;

d)      revoke and return all shares of Crowd Source owned by Entrepidus to Crowd Source; and

e)      such further relief as this Court may deem just and proper, in law or equity.

## COUNT FOUR
## USURPATION OF CORPORATE OPPORTUNITY
### (Against Castro, Entrepidus)

81.     Crowd Source repeats and realleges the averments of paragraphs 1-59, as if fully set forth herein.

82.     Defendant Entrepidus, and Castro as sole owner of Entrepidus, owned a 50% share of the voting stock of Crowd Source, and were entrusted with Crowd Source's proprietary trade secrets and confidential information.

83.     Defendants owed certain fiduciary duties to Crowd Source on account of their stock holdings in Crowd Source.

84.     Defendants used Crowd Source's proprietary trade secrets and confidential information for their own benefit and for the benefit while they owned the 42% interest in Crowd Source, and maintained a 50% share of the voting stock.

85.     Defendants failed to disclose business opportunities to Crowd Source and, instead, diverted opportunities that were developed through the use of Crowd Source assets to Entrepidus through the use of ISSY.

86.     Defendants' conduct violated their duty of loyalty to Crowd Source, and their obligation to act in the best interest of Crowd Source.

87.     Defendants' breaches of their fiduciary duty were a proximate cause of injury to Crowd Source.

WHEREFORE, Crowd Source respectfully requests that this Court enter the following relief against Defendants:

a)      enter judgment in favor of Crowd Source on Count Four;

b)      award compensatory damages in an amount to be determined at trial;

c)      order disgorgement of all payments, revenue, profits, monies, royalties and any other benefits derived or obtained by Defendants from the breach of their fiduciary duties to Crowd Source;

d)      award punitive damages for the acts constituting breach of fiduciary duty committed with fraud, oppression and/or malice in an amount sufficient to punish Defendants and deter such misconduct in the future;

e)      order restitution and forfeiture of all compensation and benefits paid to Defendant Entrepidus by Crowd Source during the period of the breach of Defendants' loyalty to Crowd Source;

f)      revoke and return all shares of Crowd Source owned by Entrepidus to Crowd Source; and

g)      such further relief as this Court may deem just and proper, in law or equity.

## COUNT FIVE
## FRAUDULANT MISREPRESENTATION
### (Against All Defendants)

88.     Crowd Source repeats and realleges the averments of paragraphs 1-59 as if fully set forth herein.

89.     During pre-incorporation discussions, Defendants Acquavella and Valentiner held themselves out to be principals, owners, and partners in Defendant Entrepidus.

90.     During all times relevant to this complaint, all Defendants were aware of this being a falsehood.

91.     Defendants Acquavella and Valentiner represented certain things, namely to safeguard the technology being developed and the trade secrets being disclosed, to build and grow the client base of Crowd Source, and to provide timely and accurate reporting and development of the technology and its related mobile applications.

92.     Crowd Source relied on statements made by Defendants Acquavella and Valentiner regarding   their agreement that Entrepidus would keep the technology and trade secrets confidential and secret.

93.     All Defendants intended the statements made by Acquavella and Valentiner to induce Crowd Source to deliver a 42% ownership interest in Crowd Source, and to induce Dance to provide said trade secrets to Entrepidus.

94.     All Defendants were aware the technology ISSY was roughly 60% developed when Dance relayed the concepts involved in INSIGHT prior to incorporation of Crowd Source.

95.     Defendants induced Crowd Source to deliver the specifications of INSIGHT and to provide the trade secrets which Defendants used to complete ISSY.

96.     Defendants then, without disclosing the misappropriation of the INSIGHT technology, completed development of ISSY and began selling it in the marketplace as a direct competitor to INSIGHT.

97.     At no time in the discussions leading to incorporation, or for the next four months following incorporation and disclosure of the INSIGHT information, was ISSY disclosed to Crowd Source.

98.     Crowd Source has been damaged by the misappropriation of the technology and its sale on the open market by Entrepidus.

        WHEREFORE, Plaintiff, Crowd Source, Inc., respectfully requests that this Court enter the following relief against Defendants Entrepidus LLC, Castro, Acquavella, and Valentiner:

        h)      enter judgment in favor of Crowd Source on Count Five;

        i)      award compensatory damages in an amount to be determined at trial;

        j)      order disgorgement of all payments, revenue, profits, monies, royalties and any other benefits derived or obtained by Defendants from their fraudulent misrepresentations to Crowd Source;

        k)      award punitive damages for the acts constituting fraud;

        l)      revoke and return all shares of Crowd Source, delivered due to their fraudulent misrepresentations, owned by Defendants to Crowd Source; and

m)      such further relief as this Court may deem just and proper, in law or equity.

## COUNT SIX
## DECLARATORY JUDGMENT OF PATENT OWNERSHIP
### (Against All Defendants)

99.    Crowd Source repeats and realleges the averments of paragraphs 1-59 as if fully set forth herein.

100.   Defendant Entrepidus orally contracted responsibilities at Crowd Source included assisting in the development of innovative mobile communication system technologies, including the design of distributed mobile communications and marketing software and applications.

101.   Defendant Valentiner, through his employment with Entrepidus' assisted in the development of said software.

102.   Defendants Castro and Acquavella's responsibilities to Crowd Source included the development of new business, through the commercialization of proprietary Crowd Source technology, and assisting in the commercialization of innovative mobile communication and marketing software and applications.

103.   All Defendants agreed that Defendant Entrepidus' 42% ownership stake in Crowd Source was in consideration for their reduced development rates and for creation of a work for hire agreement such that all technology designed or coded by Entrepidus on behalf of Crowd Source would be the proprietary technology of Crowd Source.

104.   Defendants used Crowd Source's proprietary technology of INSIGHT to substantially complete the program ISSY developed and conceived during their involvement with Crowd Source.

22

105.   Defendants failed to disclose their inventions, innovations and ideas to Crowd Source, and further failed to submit records of these inventions to Crowd Source, as required by their agreements fiduciary duties to Crowd Source.

106.   Crowd Source is the owner of certain patent applications disclosing and claiming a system and  method for cloud based marketing campaign control, namely U.S. Patent Application Nos. 13/786,468 (hereinafter the "Crowd Source Patent Applications").

107.   The named inventor listed on the Crowd Source Patents Applications is Daniel Frankfort, a minority shareholder in Crowd Source.

108.   Each of the inventions disclosed and claimed in the Crowd Source Patent Applications were developed and/or conceived by Dance, Dance and Frankfort, or by Dance and Frankfort jointly with Valentiner and others at Crowd Source, during the term of their shareholder status at Crowd Source.

109.   There is an actual and justiciable controversy regarding the rightful owner of the invention or inventions collectively described as ISSY as they are in part based on architecture covered under the Crowd Source patent applications.

110.   Crowd Source is entitled to a declaration that INSIGHT, ISSY, and all inventions derived therefrom, are owned by Crowd Source.

111.   Crowd Source thus seeks a declaration from this Court pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201, that Crowd Source is the rightful owner of the Crowd Source Patents, INSIGHT, ISSY, and all other inventions and patent applications pending worldwide that were derived from the inventions claimed in the Crowd Source Patent Applications, and any other inventions developed by Defendants using Crowd Source resources.

WHEREFORE, Plaintiff, Crowd Source, Inc., respectfully requests that this Court enter the following relief against Defendants Entrepidus LLC, Castro, Acquavella, and Valentiner:

a)      a declaration that Crowd Source owns all right, title and interest to the invention or inventions disclosed and claimed in the Crowd Source Patent Applications, and all inventions derived therefrom;

b)      a declaration that Crowd Source owns all right, title and interest to ISSY, all inventions derived therefrom, and any patent, continuation patent, or divisional patent that may issue therefrom;

c)      order Entrepidus to make a full and complete disclosure to Crowd Source of the invention or inventions derived from the Crowd Source Patent Applications;

d)      order Entrepidus, Valentiner, Acquavella, and Castro to assign to Crowd Source all of their right, title and interest in the Crowd Source Patent Application, and any patents issuing from such applications and all worldwide right, title and interest to the invention disclosed therein;

e)      enter a preliminary and permanent injunction enjoining Entrepidus, and those persons in active concert with them, from employing the methods, or from making, using, offering to sell or selling, or importing into or exporting out of the United States, the technology claimed in the Crowd Source Patent Application as of the issue date of any patent which issues from such applications; and

f)      grant such other and further relief as this Court deems appropriate under the circumstances.

**COUNT SEVEN**
**CIVIL CONSPIRACY**
**(Against Castro, Valentiner and Acquavella)**

112.   Crowd Source repeats and realleges the averments of paragraphs 1-59, as if fully set forth herein.

113.   Prior to October 2011 to this complaint, Defendants Castro, Valentiner and Acquavella, did each knowingly and willfully conspire and agree among themselves to commit wrongful acts damaging to Crowd Source, including:

- to induce Crowd Source employees or officers to deliver access to the proprietary technology with the intent to misappropriate it to complete development of ISSY;
- to breach their fiduciary duties to Crowd Source, by simultaneously working for the benefit of themselves with respect to sales of ISSY;
- to misappropriate Crowd Source's proprietary trade secrets and confidential information for the benefit of themselves and Entrepidus;
- to violate the Computer Fraud and Abuse Act by accessing Crowd Source's computers without authorization or exceeding their authorization in order to obtain valuable confidential and proprietary information of Crowd Source; and
- to willfully prevent Crowd Source from accessing its own technology and preventing Crowd Source from obtaining copies of or originals of its own proprietary code.

114.   One or more of Defendants committed numerous overt acts in furtherance of the common scheme, including but not limited to unlawfully misappropriating Crowd Source's Trade Secret Information, and retaining such information after Defendants began attempting to negotiate an exit from Crowd Source, despite their prior agreements to return such property and despite Crowd Source's demand for the return of the property, using and transferring Crowd Source's Trade Secret Information for the benefit of Defendant

25

Entrepidus, and copying and/or destroying Crowd Source's electronically stored information.

115. In particular, Defendant Castro's wrongful acts include: generating or assisting in the preparation of business plans and other Entrepidus documents which pertain to the sale and marketing of ISSY, providing executive oversight of the sale of ISSY during his tenure as sole owner of Entrepidus, inducing his subordinates at Entrepidus to misappropriate the proprietary technology of Crowd Source, in furtherance of the conspiracy for the benefit of Castro and Entrepidus.

116. In particular, Defendant Acquavella's wrongful acts include: coordinating, scheduling, and arranging reimbursement for multiple business trips for his own benefit both within and outside the United States, and making financial and business arrangements for Entrepidus with respect to the creation, marketing and sale of ISSY, in furtherance of the conspiracy for the benefit of Entrepidus.

117. In particular, Defendant Valentiner's wrongful acts include: transferring Crowd Source's proprietary trade secrets and confidential information to third parties including to Entrepidus personnel and to additional parties both within and outside the United States, making numerous business trips on behalf of Entrepidus both within and outside the United States, including Venezuela, while providing services to Crowd Source, in furtherance of the conspiracy for the benefit of Entrepidus.

118. As a direct result of the foregoing conduct, Defendants have caused and continue to cause damage to Crowd Source, including but not limited to attorneys' fees and costs that have been expended and that will be expended in the future by Crowd Source to enforce its legal rights.

119.    Defendants' conduct was willful and malicious and performed with an evil motive and with reckless indifference to the rights of others, entitling Crowd Source to punitive damages.

WHEREFORE, Crowd Source, Crowd Source, Inc., respectfully requests that this Court enter the following relief against Defendants:

a)      enter judgment in favor of Crowd Source on Count Seven;

b)      award compensatory damages in an amount to be determined at trial;

c)      award punitive damages in an amount sufficient to punish Defendants and deter such misconduct in the future;

d)      award Crowd Source the costs and attorneys' fees incurred in bringing this action; and

e)      such further relief as this Court may deem just and proper, in law or equity.

## JURY DEMAND

Pursuant to FED. R. CIV. P. 38(b), Crowd Source Development, Inc. respectfully demands a trial by jury of all issues triable by a jury in its Complaint.

Date: January 14, 2014                    Respectfully submitted,

                                          /s/ Arik D. Hetue

                                          Arik D. Hetue

                                          Keefe, Campbell, Biery & Associates, LLC
                                          118 North Clinton Street
                                          Suite 300
                                          Chicago, IL 60661
                                          Tel: 312-756-3707
                                          Fax: 312-756-1901
                                          Attorneys for Crowd Source Development,
                                          Inc.